**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**

---

ETIENNE UZAC, DAVID ENWRIGHT, WILLIAM DOVE, MYONG SOP SHIM, JAEWON KIM, DONG-CHAN KIM, and JAMES KONG,

<em>Plaintiffs,</em>

<em>-against-</em>

DEV PRAGAD,

<em>Defendant.</em>

---

No. 1:25-cv-03573-JLR

Oral Argument Requested

## MEMORANDUM OF LAW IN SUPPORT OF DEFENDANT'S MOTION FOR SANCTIONS

Shireen A. Barday
Andrew W. Breland
PALLAS PARTNERS (US) LLP
75 Rockefeller Plaza
New York, New York 10019
Telephone: (212) 970-2300
shireen.barday@pallasllp.com
andrew.breland@pallasllp.com

*Attorneys for Defendant*

## TABLE OF CONTENTS

**Page**

TABLE OF AUTHORITIES...........................................................................................iii

PRELIMINARY STATEMENT....................................................................................... 1

FACTUAL BACKGROUND ........................................................................................... 3

      A.      Plaintiffs' Allegations........................................................................... 3

             1.      The Putative Consortium ........................................................ 3

             2.      Mr. Pragad's Purchase of Newsweek ..................................... 4

             3.      Purported Breaches Giving Rise to the Claims......................... 6

      B.      Prior Litigation Between the Parties ...................................................... 8

      C.      Procedural History .............................................................................. 12

LEGAL STANDARD .................................................................................................... 14

ARGUMENT ................................................................................................................. 16

      I.      THE COURT SHOULD IMPOSE SANCTIONS FOR PLAINTIFFS' MANIPULATION OF SUBJECT MATTER JURISDICTION ........................... 16

      II.      THE COURT SHOULD IMPOSE SANCTIONS BECAUSE PLAINTIFFS' COMPLAINT IS FRIVOLOUS AND WAS NOT WITHDRAWN ........................................................................................ 18

             A.      Res Judicata Bars Plaintiffs' Claims ........................................ 18

             B.      Sufficiency of the Pleading...................................................... 20

      III.      PLAINTIFFS' COMPLAINT AND PLAINTIFFS' COUNSEL'S CONDUCT CLEARLY IS DESIGNED TO HARASS .......................................... 22

CONCLUSION.............................................................................................................. 23

CERTIFICATE OF WORD COUNT COMPLIANCE.................................................... 25

# <u>TABLE OF AUTHORITIES</u>

**Page(s)**

**Cases**

*AJ Energy LLC v. Woori Bank*,
  829 F. App'x. 533 (2d Cir. 2020) ................................................................... 15

*Algonquin Power Income Fund v. Christine Falls of N.Y., Inc.*,
  362 F. App'x 151 (2d Cir. 2010) .................................................................... 18

*Amorosa v. Ernst & Young LLP*,
  No. 03 Civ. 3902(CM), 2010 WL 245553 (S.D.N.Y. Jan. 20, 2010) ......................... 16, 20

*An v. Shan*,
  No. 22-CV-10060 (ALC), 2023 WL 6215003 (S.D.N.Y. Sept. 25, 2023) ...................... 22

*ATSI Commc'ns, Inc. v. Shaar Fund, Ltd.*,
  579 F.3d 143 (2d Cir. 2009) ........................................................................ 14

*Banus v. Citigroup Glob. Markets, Inc.*,
  757 F. Supp. 2d 394 (S.D.N.Y. 2010) ........................................................ 20, 23

*Bayshore Family Partners, L.P. v. Foundation of Jewish Philanthropies of Jewish
  Federation of Greater Fort Lauderdale*,
  270 A.D.2d 374 (2d Dep't 2000) .................................................................. 19

*Benjamin v. 270 Malcolm X Dev., Inc.*,
  214 A.D.3d 762 (2d Dep't 2023) .................................................................. 21

*Bletas v. Deluca*,
  No. 11 Civ. 1777 (NRB), 2011 WL 13130879 (S.D.N.Y. Nov. 15, 2011) ...................... 15

*Caisse Nationale de Credit Agricole-CNCA, N.Y. Branch v. Valcorp, Inc.*,
  28 F.3d 259 (2d Cir. 1994) ......................................................................... 14

*Colliton v. Cravath, Swaine & Moore LLP*,
  No. 09 Civ. 400 (NRB), 2008 WL 4386764 (S.D.N.Y. Sept. 24, 2008),
    *aff'd*, 365 F. App'x 535 (2d Cir. 2009) ..................................................... 15, 21

*Douglas Elliman, LLC v. Bergere*,
  98 A.D.3d 642 (2d Dep't 2012) .................................................................... 18

*Envirotech Corp. v. Bethlehem Steel Corp.*,
    729 F.2d 70 (2d Cir. 1984) ................................................................................... 17

*Fariello v. Checkmate Holdings, LLC*,
    82 A.D.3d 437 (1st Dep't 2011) .......................................................................... 20

*Galonsky v. Williams*,
    No. 96 Civ. 6207 (JSM), 1997 WL 759445 (S.D.N.Y. Dec. 10, 1997) ............................ 15

*Goldman v. Barrett*,
    No. 15 Civ. 9223 (PGG), 2019 WL 4572725 (S.D.N.Y. Sept. 20, 2019) ....................... 15

*Gortat v. Capala Bros., Inc.*,
    No. 07 CV 3629 (ILG), 2009 WL 10706564 (E.D.N.Y. June 3, 2009) ........................... 23

*IBT Media Inc. v. Pragad*,
    220 A.D.3d 530 (2023) ........................................................................................... 9

*IBT Media Inc. v. Pragad*,
    No. 652277/2022, 2022 WL 17833309 (N.Y. Cty. Dec. 19, 2022) ................................. 8

*Immerso v. U.S. Dep't of Lab.*,
    No. 19CV3777NGGVMS, 2021 WL 3185531  (E.D.N.Y. July 28, 2021),
     *aff'd sub nom. Immerso v. United States Dep't of Lab.*,
    No. 20-4064, 2022 WL 17333083 (2d Cir. Nov. 30, 2022) ......................................... 23

*In re Austl. & N.Z. Banking Grp. Ltd. Sec. Litig.*,
    712 F. Supp. 2d 255 (S.D.N.Y. 2010) ................................................................... 21

*Int'l Shipping Co., S.A. v. Hydra Offshore, Inc.*,
    875 F.2d 388 (2d Cir. 1989) ......................................................................... 15, 16

*Katz v. Gerardi*,
    655 F.3d 1212 (10th Cir. 2011) ........................................................................ 17

*Lipin v. Hunt*,
    573 F. Supp. 2d 836 (S.D.N.Y. 2008) ................................................................ 20

*Marinelli Assocs. v. Helmsley-Noyes Co.*,
    265 A.D.2d 1 (1st Dep't 2000) ......................................................................... 19

*Mellen & Jayne, Inc. v. AIM Promotions, Inc.*,
    33 A.D.3d 676 (2d Dep't 2006) .................................................................... 20, 21

*Morley v. Ciba–Geigy Corp.*,
    66 F.3d 21 (2d. Cir. 1995) .............................................................................. 20

iv

*Nat'l Union Fire Ins. Co. of Pittsburgh, Pa. v. Karp*,
    108 F.3d 17 (2d Cir. 1997) .................................................................................... 17

*O'Brien v. City of Syracuse*,
    54 N.Y.2d 353 (1981)............................................................................................ 18

*Olivet Univ. v. Newsweek Digital LLC*,
    No. 23 CIV. 5670 (NRB), 2024 WL 1892563 (S.D.N.Y. Apr. 30, 2024),
    *aff'd*, No. 24-1473-CV, 2024 WL 5001841 (2d Cir. Dec. 6, 2024) ................................ 10

*S. Pac. Shipping Co. v. Redi-Fresh Produce Inc.*,
    No. 14 Civ. 4157 (LAK) (AJP), 2014 WL 6968039 (S.D.N.Y. Dec. 9, 2014) ................ 14

*Salovaara v. Eckert*,
    222 F.3d 19 (2d Cir. 2000) .................................................................................... 16

*Smith v. Russell Sage Coll.*,
    54 N.Y.2d 185 (1981)............................................................................................ 18

*Sussman Sales Co., Inc. v. VWR Int'l, LLC*,
    No. 20 CIV. 2869 (JHR), 2025 WL 1004729 (S.D.N.Y. Apr. 1, 2025)............................ 21

*Wood v. Brosse U.S.A., Inc.*,
    149 F.R.D. 44 (S.D.N.Y. 1993) ............................................................................. 17

*Yeiser v. GMAC Mortg. Corp.*,
    535 F. Supp. 2d 413 (S.D.N.Y. 2008) ................................................................... 19

## Statutes

28 U.S.C. § 1927.................................................................................................. 1, 19, 22

## Rules

Federal Rule of Civil Procedure 11............................................................................ 4, 16, 18

Federal Rule of Civil Procedure 19 ............................................................................... 19

## Other Authorities

Rebecca Davis O'Brien, "Prosecutors Expand Newsweek Case to Include California
    Bible College," Wall Street Journal (Nov. 16, 2024)............................................... 7

Defendant Dev Pragad submits this memorandum of law in support of his motion for sanctions against Plaintiffs Etienne Uzac, David Enwright, William Dove, Myong Sop Shim, Jaewon Kim, Dong-Chan Kim, and James Kong, as well as Plaintiffs' counsel Yen-Yi Anderson and Ms. Anderson's law firm Anderson and Associates P.C. (Ms. Anderson and the firm collectively, "Plaintiff's Counsel"), pursuant to Federal Rule of Civil Procedure 11(c) and 28 U.S.C. § 1927.

## PRELIMINARY STATEMENT

As set out in Mr. Pragad's contemporaneously filed motion to dismiss, Plaintiffs' claims are baseless and subject to dismissal on both procedural and substantive grounds. There is no good faith argument in opposition to the black letter law compelling that result. However, when confronted those arguments, Plaintiffs' Counsel refused to withdraw the Complaint, doubled down on her frivolous claims, and began an abusive series of litigation tactics in this and other courts. The only remedy at this point, in addition to dismissal here, is the imposition of sanctions on both Plaintiffs and their counsel for abuse of the litigation process.

Indeed, sanctions clearly are warranted. For one, Plaintiffs admit that they omitted other plaintiffs with *identical* claims from this action to manufacture diversity jurisdiction. Were that procedural malfeasance not enough, in defending their actions, Plaintiffs admit that their "contract" claims lack even the most basic elements—*i.e.*, who actually are parties to the alleged "agreement." This alone merits immediate dismissal, and these issues, without more, are sufficient to sanction Plaintiffs and their counsel, as is clear from the face of the filings at issue.

But there is more. Plaintiffs' claims also are subject to dismissal and sanctions because they are hopelessly frivolous: they are barred by res judicata, they are insufficiently pleaded, and they depend on the existence of a "contract" that does not exist and that, if it did, would be contrary

to law. There can be no dispute about these arguments as set out both herein and in Mr. Pragad's motion to dismiss. Further, although it does not appear that any "evidence" or repleaded allegations could overcome the defects in Plaintiffs' case, Mr. Pragad provided Plaintiffs an opportunity to offer any they had. Specifically, when Plaintiffs informed Mr. Pragad's counsel that that they had relevant evidence, including witness testimony and affidavits, Mr. Pragad, out of an abundance of caution, provided Plaintiffs a chance to prove up the basis for their claims by asking them to produce the evidence they purport to have. Plaintiffs did not even respond to this request. That failure is telling.

Indeed, it is clear that this case solely is designed to harass and attempt to intimidate Mr. Pragad as evidenced by the complaint's lack of merit as well as Plaintiffs' and their affiliates' yearslong litigation campaign against Mr. Pragad (of which this suit is one of nine matters commenced by Plaintiffs' counsel herself—seven suits, one direct appeal and one petition for writ of certiorari to the Supreme Court of the United States). The Court cannot permit it to continue. As set forth below, the Court should impose sanctions for Plaintiffs' actions by awarding fees against Plaintiffs and their counsel, jointly and severally, requiring Plaintiffs' counsel to enroll in continuing legal education classes relating to diversity jurisdiction and federal practice, and issuing vexatious litigant sanctions, either by requiring a bond to file any new cases against Newsweek and its affiliates or by requiring Plaintiffs and their affiliates to seek leave of Court before any such filing.

## FACTUAL BACKGROUND

### A.     Plaintiffs' Allegations

#### 1.     The Putative Consortium

Plaintiffs allege that they are members of an alleged "Founder and Investor Consortium" (the "Consortium") affiliated with, among others, IBT Media, Inc. ("IBT"). ¶¶19–21.[1] IBT is a digital news media company led by Plaintiff Etienne Uzac, which publishes material under several online imprints, including the "International Business Times" and "Tech Times." ¶21. Relevant here, in 2013, IBT acquired Newsweek, the iconic news magazine founded in 1933. ¶23. Plaintiffs allege that, despite being owned by an IBT subsidiary, Newsweek was actually "managed for the benefit of the" Consortium. ¶24. Allegedly to memorialize this restriction, on a date that Plaintiffs have not identified and in a place that is unnamed, Plaintiffs claim that the members of the Consortium entered into an oral "Joint Venture Agreement." *Id*. With no documentary evidence or verified testimony, Plaintiffs nevertheless assert that it required that:

> Profits from Newsweek would be shared with the Consortium members at an equal share. Losses would also be shared accordingly. Regular reports would be required by the Consortium from Mr. Uzac about the status of Newsweek, and no major decisions about the Newsweek brand or assets were to be made without a consensus from the Consortium members, and each individual held an equal share of the voting power of the joint venture. Although ostensibly the assets were to be held under IBT Media as a holding company, internally, it was agreed through the Joint Venture that the assets of the holding company would be owned and controlled in equal share by each of the 14 members of the Founder and Investor Consortium.

*Id*. The Consortium also purportedly agreed that "should Mr. Uzac or IBT Media wish to leave the Joint Venture, the Newsweek assets would be returned to the Consortium for a nominal amount." ¶25. Plaintiffs alleged that Mr. Uzac was not permitted to manage Newsweek solely for

---

[1]     Citations herein to "¶__" refer to Plaintiffs' Complaint [ECF No. 3].

his personal gain, or to disassociate himself from the Consortium, without relinquishing control of Newsweek. . . ." *Id*.

### 2. Mr. Pragad's Purchase of Newsweek

Beginning in 2016, Mr. Uzac (along with IBT and others) became the target of an investigation by the Manhattan District Attorney's Office, from which both Mr. Uzac and IBT were indicted and pleaded guilty.  ¶¶41–46; *see also* Ex. 1 at 1.[2]  At the time, Mr. Pragad already had become CEO of IBT and Newsweek, replacing Mr. Uzac.[3]  Thereafter, Mr. Pragad entered into discussions with others in IBT's management to purchase Newsweek from IBT and to reestablish it as a standalone company.  ¶¶57, 59-60.  Ultimately, agreement was reached and IBT entered into a "Membership Interest Purchase Agreement" ("MIPA") on September 13, 2018.  *See* Ex. 3.  The MIPA provided for the transfer of all of the membership interests in Newsweek LLC (that is, the ownership of the company, publication, and right to operate it) to a new entity formed by Mr. Pragad, NW Media Holdings, Inc., without any reservations or continued ownership by IBT.

Specifically, in the MIPA, IBT "agree[d]" "to sell, transfer and assign to" NW Media "all of the Membership Interest" in Newsweek, which "represent[ed] all of [IBT's] right, title, and interest in and to its ownership interest in the Company."  Ex. 3 § 1 & Recital B.  In exchange,

---

[2]    Among the other Defendants indicted by the Manhattan District Attorney was William Anderson and his company Christian Media Corporation.  *See* Ex. 1; *see also* Rebecca Davis O'Brien, "Prosecutors Expand Newsweek Case to Include California Bible College," Wall Street Journal (Nov. 16, 2024), attached as Ex. 2.  Mr. Anderson is the husband of present counsel for Plaintiffs (Yen-Yi Anderson) and is a "Law Clerk" in Ms. Anderson's firm.  Mr. and Ms. Anderson, Etienne Uzac, and the other "Consortium" members are affiliated with IBT, Olivet University, the World Olivet Assembly, and the "Community" formed by David Jang.  *See generally* Ex. 4.

[3]    This fact, among others, is misrepresented in Plaintiffs' Complaint, which is not verified.  *See* ¶46.  Because the timing of the transfer of leadership is not material to this motion, Mr. Pragad does not advance any additional arguments on the topic here.

NW Media paid $5,000 in cash as a "Purchase Price," which IBT "acknowledge[d] and agree[d] . . . was fully negotiated between [the parties] and . . . [wa]s fair and adequate consideration for the Membership Interest," particularly in light of the related provision of the MIPA requiring Newsweek to repay $1.5 million in intercompany debt to IBT over the next five years, along with assuming all operational debt of Newsweek, which was then in excess of $5 million.  *Id*. §§ 2, 5(g) 5(f).  Contrary to Plaintiffs' claims here, IBT (acting through Uzac) represented that "neither [IBT] ***nor any third party*** owns any ownership interests of any kind or nature in the Company or any options or rights to acquire any such ownership interests in the Company."  *Id*. § 5(a) (emphasis added).  If further represented that the MIPA "will not . . . require the consent . . . of any . . . joint venture" and "will not . . . conflict with" any "contract . . . or [] result in the creation of any Claims or restrictions upon the Membership Interest."  *Id*. § 5(c).  These "representations" were explicitly the basis for the execution of the MIPA.  *Id*. § 1.  In addition to the representations, the MIPA contained a broad integration clause stating that the contract "supersede[s] all prior and contemporaneous agreements and understandings between the Parties with respect to the matters set forth herein" and a mandatory forum selection clause requiring any action "arising out of, relating to, or referring to" the agreement be filed in New York County."  *Id*. § 12(d).

IBT's Board of Directors went even further in approving the MIPA.  In the "Unanimous Written Consent of the Directors of IBT Media, Inc." (the "IBT Consent"), through which IBT authorized the execution of the MIPA, the IBT Board (including Mr. Uzac) "consent[ed] to the sale of [IBT's] Membership Interest in Newsweek LLC upon the same terms and conditions as are contained in the [MIPA]."  *Id*. at 3.  Moreover, the IBT Consent resolved that "all of the actions and decisions of the Officers and Board of Directors of the Corporation through the date of this action are hereby approved, ratified, and confirmed."  *Id*.  The "officers" referenced there

definitionally included Mr. Pragad, the CEO. Finally, the "Assignment of Membership Interest" executed by IBT to effectuate the MIPA (the "IBT Assignment") provided that the MIPA was "binding upon the undersigned its affiliates, successors, transferees and assigns." *Id*. at 6.

Plaintiffs acknowledge the MIPA, *see* ¶60, but emphasize that the transfer of Newsweek to Mr. Pragad was really pursuant to his assent to the Consortium's oral "Joint Venture Agreement," which he supposedly joined long after it was entered into among the 13 initial purported members. ¶¶54–57. They further claim that Mr. Pragad's ownership of Newsweek was always to be "temporary," ¶54, and that if Mr. Pragad were to "sever ties with Mr. Uzac or the Founder and Investor Consortium, he would be bound by the internal Joint Venture Agreement to personally return his share of the Newsweek assets to Mr. Uzac or to the Founder and Investor Consortium, on demand, for a nominal price, and to relinquish his position as ostensible owner of NW Media Holdings Corp." ¶¶56, 61. The MIPA says none of this.

### 3.    Purported Breaches Giving Rise to the Claims

Plaintiffs also assert that IBT's entry into the MIPA (as apparently directed by the Consortium, despite Plaintiffs assertion that they are not IBT, *see infra*) was induced by Mr. Pragad through fraud. Plaintiffs claim, without specifics as to when, where, or to whom, that Mr. Pragad "falsely represent[ed] to the consortium members that one or more Assistant District Attorney [sic] at the Manhattan DA's office had stated to Pragad's legal team that the Manhattan DA's office would like Pragad to take over Newsweek leadership. Pragad allegedly told Founder and Investor Consortium members that the transfer of Newsweek to himself would reduce the 'heat' on Mr. Uzac." ¶49. Even if these facts were true, Plaintiffs do not attempt to explain how reliance on this representation could possibly be construed as reasonable. However, Plaintiffs claim that this representation, in fact did occur and turned out to be false to the detriment of IBT: "Only years later, on or about November 14, 2023, did Mr. Uzac and the Founder and Investor Consortium

6

discover from a colleague that had been in contact with the lead Assistant District Attorney assigned to the DA case that no one at the DA's office had ever made such a representation to Pragad." ¶50. Plaintiffs do not explain why they never asked the ADA, who is unnamed in the Complaint, to clarify under what circumstances he would ever have told Mr. Pragad what he is alleged to have said or why in 2023, this same unnamed ADA suddenly told an unnamed "colleague" of the "Consortium" that he never made the statement at all. (Mr. Pragad is also left guessing how the unnamed ADA learned what the alleged statement was in the first place if he, in fact, never made that statement—or why he would have been talking about it so many years later.)

Plaintiffs further assert that beginning in 2022, Mr. Pragad began to withdraw from the Consortium he allegedly joined, meriting the Consortium "reinstating Mr. Uzac" and demanding he "return Newsweek to either Mr. Uzac or the [Consortium]." ¶¶71, 73. Plaintiffs claim that Mr. Pragad then "sought the [Consortium's] permission to break his Agreement with the Consortium," which the Consortium refused. ¶¶74–77. While at the pleading stage, the Court must take the well-pleaded allegations of the Complaint as true, the reality is that the "severing" of Mr. Pragad's relationship with IBT (and the Consortium) also was something the parties agreed to and understood as a result of the MIPA. As explained more completely in another pending action in New York state court brought by NW Media Holdings against IBT and its affiliates (including Mr. Uzac), the process of disentangling Newsweek's business from IBT (with which it had been operated for five years) took several years itself, exacerbated by the COVID-19 pandemic. *See* Ex. 4. In fact, that process remains ongoing as IBT refuses to pay debts that Newsweek advanced for IBT expenses, employees, tax liabilities, and claims against it. *Id*. In short, what Plaintiffs now call Mr. Pragad's "severance" from the Consortium was the end of a process IBT (and, by extension, the IBT employees in the "Consortium") agreed to.

### B.    Prior Litigation Between the Parties

As discussed herein, this is not the first litigation brought by IBT affiliates against Mr. Pragad in an attempt to assuage their seller's remorse. In 2022, IBT filed an action against NW Media Holdings and Mr. Pragad seeking a declaration that the MIPA was void and demanding damages for breach of a purported "oral" agreement that Mr. Pragad's purchase of Newsweek was "temporary" and that he would sell Newsweek back to IBT after the resolution of the criminal charges against IBT and Uzac. Compl., *IBT Media, Inc. v. Pragad, et al.*, No. 652277/2022 (filed June 30, 2022) (the "2022 Action"), attached as Ex. 5. The 2022 Action also involved claims for, among other things, fraudulent inducement into the MIPA (based on alleged "misrepresentations" about the same "oral agreement"), misappropriation of IBT trade secrets by NW Media and Mr. Pragad, breach of fiduciary duty, and unjust enrichment. Ex. 5 ¶¶ 116–67. Each of the claims was premised on the putative oral agreement that, in effect, the MIPA was a sham because the sale was designed to be "temporary" while IBT resolved pending criminal charges. Ex. 5 ¶¶ 9, 69.

In the 2022 Action, both NW Media and Mr. Pragad moved to dismiss the complaint, and the Court granted the motion, rejecting each and every one of these claims asserted by IBT. *IBT Media Inc. v. Pragad*, No. 652277/2022, 2022 WL 17833309 (N.Y. Cty. Dec. 19, 2022); *see also* Ex. 6. The Court found that the MIPA was an enforceable contract, that IBT "expressly disclaimed" the terms it was seeking to imply into the agreement, and that the "merger clause . . . supersedes all prior and contemporaneous agreements and understandings between the Parties." *Id*. Importantly, the contract claims were dismissed **with prejudice**. *Id*. at *3. The Court's decision as to IBT's claims was affirmed on appeal, and the Appellate Division, First Department further "declared" the MIPA "enforceable." *IBT Media Inc. v. Pragad*, 220 A.D.3d 530, 531 (2023) ("We modify the order solely to declare that the purchase agreement is enforceable"); *see also* Ex. 7.

8

That's still not all.  At least four other cases previously were filed by Olivet University, an IBT affiliate, through Plaintiffs' Counsel, against Mr. Pragad and other Newsweek employees for coverage of IBT's and Olivet's ongoing legal trouble.  *See, e.g.*, *Olivet University v. Newsweek Digital LLC, et al.*, No. 1:23-cv-05670 (S.D.N.Y.) (filed June 30, 2023); *Olivet University v. Rouhandeh*, No. 8:24-cv-00771 (M.D. Fl.) (filed Mar. 27, 2024); *Olivet University v. Pragad*, No. 8:25-cv-00762-JSM-AEP (M.D. Fl.) (filed Mar. 27, 2025); *Olivet University v. Rouhandeh*, No. 8:25-cv-01678 (M.D. Fl.) (filed June 29, 2025).[4]  The last of these action, ***filed yesterday***, asserts a claim for defamation based on a Newsweek article describing the resolution of earlier litigation between Mr. Pragad, IBT, and the co-owner of Newsweek, Johnathan Davis.  *See* Ex. 8.  The thrust of the (frivolous) complaint, which is brought against Newsweek reporters, editors, and Mr. Pragad, is that the article "inaccurately states that the 'shareholders' ended the legal dispute, but in fact, the ownership of Newsweek was still being disputed, and is still disputed." *Id.* ¶ 33.  Mr. Pragad is left to assume that the "ongoing" dispute about Newsweek's ownership refers to this case and the other actions Plaintiffs' Counsel contemporaneously filed.  *See infra*.  On the back of those cases, Plaintiffs' Counsel ran to a yet-different forum to continue asserting her baseless claims.  Olivet has not prevailed in any of these matters, and Mr. Pragad expects that it will not succeed in any of the still-pending cases.  In fact, Olivet received an adverse judgment in the matter before the Southern District of New York, which was affirmed on appeal to the Second Circuit. *Olivet Univ. v. Newsweek Digital LLC*, No. 23 CIV. 5670 (NRB), 2024 WL 1892563, at *1 (S.D.N.Y. Apr. 30, 2024), *aff'd,* No. 24-1473-CV, 2024 WL 5001841 (2d Cir. Dec. 6, 2024).  Mr. Pragad expects a similar outcome in each of the other cases, but not without causing him and others at Newsweek to expend significant resources contesting these meritless actions.

---

[4]     Ms. Anderson is counsel for Olivet is each of these matters.

Within a day of this case being filed, affiliates of IBT, represented by Plaintiffs' Counsel filed two other cases against Mr. Pragad and other Newsweek executives: *Wong v. Pragad*, Index No. 62345/2025 (Westchester County) (filed April 29, 2025) (the "State Contract Action"); *IBT Media, Inc. v. Pragad*, Index No. 62346/2025 (Westchester Cty.) (filed April 30, 2025) (the "State Fiduciary Action"). Other than the description of the parties, the substantive allegations in the State Contract Action are identical to those here, **down to the typos** in the complaints. *Compare, e.g.*, ¶55 (for example, two periods after "accordingly"), *with* Ex. 9 ¶ 52 (same). Indeed, it is essentially the same case, just brough on behalf of the six "Consortium" members who are not Plaintiffs here. To wit, the relief sought in the State Contract Action is the same as that sought here; the plaintiffs seek specific performance of the same purported "oral Joint Venture Agreement" or, in the alternative, recission. *Compare* ¶¶89–112, *with* Ex. 9 ¶¶ 86–109. The State Contract Action also admits that it was filed to manufacture diversity jurisdiction:

> This case has been filed along with parallel federal Case Number 25-3573 in the U.S. District Court for the Southern District of New York, White Plains. The plaintiffs in the federal case are led by Mr. Etienne Uzac, the lead investor of a dedicated group of media founders and investors that formed a joint venture to acquire Newsweek. **Mr. Uzac and the parallel federal case plaintiffs are out-of-state Newsweek investors that filed their federal lawsuit based on diversity subject matter jurisdiction. The present state court case is brought by the above-captioned in-state Plaintiffs based on the general subject matter jurisdiction of the Supreme Court of the State of New York over civil cases.** Although the two cases—one, federal, and the other, state—are parallel and deal with a common nucleus of operative facts, **the Southern District federal court cannot exercise supplemental jurisdiction over the present case in-state claims because doing so would break complete diversity among the parties.** Therefore, the New York State-based investors in the joint venture have brought this in-state case in the New York State Supreme Court of Westchester County, the county where defendant Pragad resides. The allegations and claims brought here largely parallel the allegations in the federal case.

Ex. 9 at 1 n.1 (emphasis added). Originally, Plaintiffs' Counsel included this disclosure only in the State Contract Action and not in this case—seeming to acknowledge that the Court would be

skeptical of their gamesmanship—but it was then included in Plaintiffs' letter filing seeking no relief and, as discussed below, levying attacks on Mr. Pragad and counsel.  *See* ECF No. 11.

On the other hand, the State Fiduciary Action asserts claims for breach of fiduciary duty and misrepresentation against Mr. Pragad and other current Newsweek executives.  *See* Ex. 10. Just as the claims in this action (and the Federal Action) mirror those from the 2022 Action, the State Fiduciary Action claims mirror, with some immaterial additions, the fiduciary duty and misappropriation claims asserted in the 2022 Action—which were dismissed.  *Compare id*. ¶¶ 24– 28, 41-52, *with* Ex. 5 ¶¶ 131–53.  Mr. Pragad has filed motions to dismiss both state court actions.

The allegations in each of the three new actions—this case, the State Contract Action, and the State Fiduciary Action—essentially seek to relitigate the same issues that were addressed in the 2022 Action and to reassert claims that were dismissed with prejudice there.  As to this case,

- Both the 2022 Action and this case asserted the existence of oral contracts that supplement and alter the plain terms of the MIPA.  The 2022 Action court previously dismissed this effort with prejudice and ruled that the merger clause in the MIPA foreclosed such "oral agreements."  *E.g.*, ¶¶24–25, 51–57; Ex. 5 ¶¶ 104–21.

- Both the 2022 Action and this case asserted the Mr. Pragad's purchase of Newsweek was "temporary" and was undertaken because of—and would be rescinded following resolution of—the Manhattan District Attorney investigation into IBT and Mr. Uzac. The 2022 Action court dismissed these allegations with prejudice when rejecting, among other things, the Promissory Estoppel and Unjust Enrichment claims in that case.  *E.g.*, ¶¶60-62; Ex. 5 ¶¶ 9, 148–49.

- Both the 2022 Action and this case asserted that the MIPA was procured by fraud.  The Court rejected this claim with prejudice in the 2022 Action.  *E.g.*, ¶¶49–51; Ex. 5 ¶¶123–30

- Both the 2022 Action and this case sought the imposition of a constructive or actual trust over the membership interests in Newsweek, in order to ensure that the company is managed consistently with the alleged "oral agreements."  *E.g.*, ¶¶84–88; Ex. 5 ¶¶154–62.

### C.    Procedural History

This action was filed on April 29, 2025.  The Complaint asserts two causes of action.  First, Plaintiffs seek "specific performance" of the alleged oral "Joint Venture Agreement," requiring Mr. Pragad to "share the Newsweek assets in equal proportion with each of the coventurers, and to sell Newsweek to the coventurers for a nominal price since he broke ties with the Consortium." ¶¶89–98.  Notably, the "coventurers" were not parties to the MIPA and do not claim to have ever held any formal title to the company.  Second, and in the alternative, Plaintiffs seek recission because of Mr. Pragad's alleged "material misrepresentations."  ¶¶99–112.[5]  Nothing in the Complaint, however, addresses how Plaintiffs believe they can colorably seek rescission of the MIPA in light of the prior Appellate Division holding that it is a binding, enforceable agreement that therefore forecloses the claims that Plaintiffs now want to assert.

As the Court is aware, after Mr. Pragad was served, he sought an extension of time to respond to the Complaint from Plaintiffs' Counsel.  Ex. 11 at 7.  In the same letter, Mr. Pragad also initiated the process giving rise to this motion, explaining the myriad ways the Complaint is frivolous and barred by the resolution of the 2022 Action.  *Id.* at 1, 3–7.  Plaintiffs' Counsel refused the extension request because Mr. Pragad purportedly had not provided "good cause."  Ex. 12 at 1, 5.  She likewise disputed the substance of the Rule 11 notice and threatened sanctions merely for sending the notice itself (though notice is required by the Rule 11 meet and confer requirement).[6]  Moreover, Plaintiffs' Counsel's letter was replete with needless attacks not on Mr.

---

[5]    The Complaint does not clearly allege which of the MIPA, the oral "Joint Venture Agreement," or both Plaintiffs seek to "rescind."  As described in Mr. Pragad's motion to dismiss, Plaintiffs do not have standing to seek rescission of the MIPA and rescinding the "Joint Venture Agreement" would have no effect on the ownership and operation of Newsweek.

[6]    Plaintiff recently reiterated her intention to file a "cross-motion for sanctions" when she contacted Mr. Pragad's counsel about an extension of her time to respond to the not-yet-filed motion to dismiss.  *See* Ex. 14.  Were such a motion ultimately to be filed, it would be

Pragad's legal arguments but on him personally.  *Id*. at 2 (detailing alleged threats "to mow down others like 'puppies before a machine gun'").[7]  But Plaintiffs' Counsel's response also claimed that Plaintiffs have "dozens of witnesses and affidavits to attest to the factual basis of the complaint."  Ex. 12 at 1.  To satisfy his obligations to meet and confer, and to ensure the merits of his arguments here, Mr. Pragad asked Plaintiffs' Counsel to produce all written documents supporting the complaint to understand better the factual basis that Plaintiffs' Counsel claims exists.  Ex. 13 at 1.  To date, however, Plaintiffs' Counsel has not responded to the request at all.

Defendant's extension of time to respond to the Complaint, thereafter, was granted by the Court.  *See* ECF No. 10.  Unsatisfied, Plaintiffs' Counsel filed a four-page response to the order, much of which consists of *ad hominem* attacks and name-calling against both Mr. Pragad and his counsel.  *See, e.g.*, ECF No. 11 at 1 (stating that Mr. Pragad "is a coercive manager who has threatened to 'nuke everyone' that crosses him"); *id*. (quoting reviews from Glassdoor.com); *id*. at 2-3 (accusing counsel of being "ruthless" and acting "in bad faith").[8]  Plaintiffs submitted no sworn statements in connection with the letter and sought no relief from the Court—it appears calculated to harass and cause prejudice.  This Motion followed and is being filed simultaneously with Mr. Pragad's motion to dismiss the Complaint in this Action.  Mr. Pragad served this motion on

---

sanctionable because it would be merely retaliatory and brought in bad faith.  *E.g.*, *Safe-Strap Co. v. Koala Corp.*, 270 F. Supp. 2d 407, 421 (S.D.N.Y. 2003) ("Thus, where a party's motion for Rule 11 sanctions is not well grounded in fact or law, or is filed for an improper purpose, a court my find itself in the position of imposing Rule 11 sanctions on the moving party and/or her attorney." (quotation omitted)).

[7]     While phrased as a quote, this reference comes from a publication, HNGN, affiliated with IBT.  "Pleroma Media," the putative owner of HNGN, is operated by IBT affiliates and others associated with the World Olivet Assembly and the "Community."  *See* Ex. 4 at 2, 15.

[8]     As above with HNGN, the "Latin Times" is a publication ownership and operation with IBT.  It is telling that the only non-IBT-affiliated source to which Plaintiffs can point is Glassdoor.com, onto which anyone can leave a review claiming to be a current or former employee without any verification.

Plaintiffs' Counsel via email on June 6, 2025, and the 21-day safe harbor period elapsed on June 27, 2025. *See* Ex. 14. Since serving the motion, Plaintiffs' Counsel has not addressed the substance of the motion and has only contacted the undersigned counsel as described above.

## LEGAL STANDARD

Rule 11 of the Federal Rules of Civil Procedure requires an attorney filing a pleading to "certif[y] that to the best of the person's knowledge, information, and belief, formed after an inquiry reasonable under the circumstances," the claims are "not being presented for any improper purpose, such as to harass," "are warranted by existing law or by a nonfrivolous argument for extending, modifying, or reversing existing law or for establishing new law," and are based on "factual contentions [with] evidentiary support." Fed. R. Civ. P. 11(b)(1), (2), (3).

Sanctions under Rule 11 "require[] only a showing of objective unreasonableness on the part of the attorney or client signing the papers." *ATSI Commc'ns, Inc. v. Shaar Fund, Ltd.*, 579 F.3d 143, 150 (2d Cir. 2009); *see also Caisse Nationale de Credit Agricole-CNCA, N.Y. Branch v. Valcorp, Inc.*, 28 F.3d 259, 264 (2d Cir. 1994) ("An argument constitutes a frivolous legal position for purposes of Rule 11 sanctions if, under an objective standard of reasonableness, it is clear . . . that there is no chance of success[.]" (citations and internal quotation marks omitted)). An improper purpose motivating the filing of a claim may be inferred from an utter lack of merit in that claim. *See S. Pac. Shipping Co. v. Redi-Fresh Produce Inc.*, No. 14 Civ. 4157 (LAK) (AJP), 2014 WL 6968039, at *10 (S.D.N.Y. Dec. 9, 2014) (citing cases). Sanctions are appropriate where the complaint alleges "implausible" and "frivolous" claims. *AJ Energy LLC v. Woori Bank*, 829 F. App'x. 533, 534 (2d Cir. 2020); *accord Goldman v. Barret*t, No. 15 Civ. 9223 (PGG), 2019 WL 4572725, at *5 (S.D.N.Y. Sept. 20, 2019).

The Court may also infer an improper purpose from the "overall circumstances" of the case, including evidence indicating that the claims were pursued as "part of a public relations campaign in order to embarrass the defendants." *Galonsky v. Williams*, No. 96 Civ. 6207 (JSM), 1997 WL 759445, at *6 (S.D.N.Y. Dec. 10, 1997); *see also Colliton v. Cravath, Swaine & Moore LLP*, No. 09 Civ. 400 (NRB), 2008 WL 4386764, at *14 (S.D.N.Y. Sept. 24, 2008) (inferring improper purpose to harass from e-mail evidence suggesting that plaintiff pursued complaint "to extort a settlement"), *aff'd*, 365 F. App'x 535 (2d Cir. 2009). "The background of litigation in other courts" may also be "relevant . . . to the question of [Plaintiff's and their counsel's] good faith, or lack of good faith, in connection with the filing of the pleadings and motions in this court." *Galonsky*, 1997 WL 759445, at *7.

Rule 11 "explicitly and unambiguously imposes an affirmative duty on each attorney to conduct a reasonable inquiry into the viability of a pleading before it is signed." *Int'l Shipping Co., S.A. v. Hydra Offshore, Inc.*, 875 F.2d 388, 390 (2d Cir. 1989). Sanctions are appropriate where a party "fail[s] to undertake a reasonable inquiry into the law that governs and clearly precludes the claim . . . for which no cause of action exists." *Bletas v. Deluca*, No. 11 Civ. 1777 (NRB), 2011 WL 13130879, at *11 (S.D.N.Y. Nov. 15, 2011).

Once a court finds that Rule 11 has been violated, it "may impose an appropriate sanction," including payment of "part or all of the reasonable attorney's fees and other expenses directly resulting from the violation," as well as nonmonetary sanctions. Fed. R. Civ. P. 11(c). Courts are empowered "with discretion to award that portion of a defendant's attorney's fee thought reasonable to serve the sanctioning purpose of the Rule," and the "scope of that discretion is broad." *Int'l Shipping Co.*, 875 F.2d at 392. Both a represented party and her attorney can be sanctioned under Rule 11. *Amorosa v. Ernst & Young LLP*, No. 03 Civ. 3902(CM), 2010 WL

245553, at *4 (S.D.N.Y. Jan. 20, 2010); *see also Salovaara v. Eckert*, 222 F.3d 19, 33 (2d Cir. 2000) (noting that both counsel and a represented party may be sanctioned where the party "had actual knowledge that filing the paper constituted wrongful conduct, *e.g.* the paper made false statements or was filed for an improper purpose." (citing *Calloway v. Marvel Ent. Grp.*, 854 F.2d 1452, 1474 (2d Cir. 1988))).

## ARGUMENT

### I.     THE COURT SHOULD IMPOSE SANCTIONS FOR PLAINTIFFS' MANIPULATION OF SUBJECT MATTER JURISDICTION

As an initial matter, this action should not be in federal court at all.  Plaintiffs and their Counsel have split identical claims between this action and the Westchester Contract Action to manufacture diversity jurisdiction, to needlessly increase costs, and to attempt to secure two chances to litigate their baseless claims.  Indeed, Plaintiffs admit to doing so.  *See* Ex. 9 at 1 n.1; *see also* ECF No. 11 (same) at 1 n.1.  But Plaintiffs also do not perceive any problem with this approach, as Plaintiffs' Counsel stated: "Should the federal court rule in favor of the federal plaintiffs, and the state court decline to do so, or vice versa, this would in no way create any legally unenforceable conundrum.  This would simply mean that there were fewer coventurers deemed legally included within the Joint Venture in the first place—that the Newsweek ownership pie would be fairly divvied among fewer plaintiffs."  *See* Ex. 12 at 4.

As explained in more detail in Mr. Pragad's motion to dismiss, Plaintiffs claims clearly are subject to dismissal on this ground, and Plaintiffs' attempts at mollifying Mr. Pragad's real concerns about piecemeal litigations and conflicting judgments are meaningless.  The State Contract Action Plaintiffs have asserted identical claims that, if resolved differently than in this case, will result in hopelessly inconsistent judgments.  That means that the State Contract Action plaintiffs are necessary and indispensable parties to this action, and that failing to join them (which

would necessarily defeat diversity jurisdiction), is grounds for dismissal. *See* Fed. R. Civ. P. 19(b); *see Envirotech Corp. v. Bethlehem Steel Corp.*, 729 F.2d 70, 76 (2d Cir. 1984) (dismissing breach of contract claims where a necessary party to the case resulted in loss of diversity; court ruled that the action should be refiled in whole in state court); *see also Katz v. Gerardi*, 655 F.3d 1212, 1219 (10th Cir. 2011) (affirming dismissal of claims for improper claim splitting).

Moreover, and again, as explained in Mr. Pragad's motion to dismiss, the risk of inconsistent judgments as a result of this improper claim splitting merits dismissal under *Colorado River* and its progeny. *Nat'l Union Fire Ins. Co. of Pittsburgh, Pa. v. Karp*, 108 F.3d 17, 22 (2d Cir. 1997). While Plaintiffs' Counsel claims that the pending litigations could result in different outcomes without conflict, this is not the case. At a minimum, Plaintiffs must be able to explain who the purported members of the putative "joint venture" are before they seek enforcement of it. But Plaintiffs assert that conflicting judgments would result in "Newsweek ownership pie [being] fairly divvied among fewer plaintiffs." Ex. 12 at 4. In other words, Plaintiffs admit that a fundamental term of their purported "contract" is not determined, and the contract, therefore, is unenforceable. Either the contract is between a determined group of people and this action must be dismissed or the identity of the parties is uncertain as Plaintiffs' Counsel explains and the "contract" is unenforceable.

In any event, sanctions for this plain gamesmanship are obviously appropriate. "[I]mproperly invoking subject matter jurisdiction of a federal court is sanctionable under Rule 11." *Wood v. Brosse U.S.A., Inc.*, 149 F.R.D. 44, 51 (S.D.N.Y. 1993) (quoting *Brignoli v. Balch, Hardy & Scheinman, Inc.*, 126 F.R.D. 462, 465 (S.D.N.Y. 1989)). Here, where Plaintiffs admit that their artful pleading was for the purpose of creating diversity jurisdiction, sanctions clearly are warranted for the purposeful act.

17

## II.    THE COURT SHOULD IMPOSE SANCTIONS BECAUSE PLAINTIFFS' COMPLAINT IS FRIVOLOUS AND WAS NOT WITHDRAWN

Plaintiffs' Complaint also is subject to dismissal on several other grounds.  Because Mr. Pragad raised each of these grounds to Plaintiffs and permitted them a chance to withdraw their Complaint, they now cannot dispute that failing to do so merits sanctions against them.

### A.    Res Judicata Bars Plaintiffs' Claims

*First*, as fully explained in Mr. Pragad's motion to dismiss, this action is entirely barred by res judicata.  The 2022 Action presented substantially similar claims that the obligations of the parties in the MIPA were modified by a prior oral agreement.  And the 2022 Action Court rejected that argument with prejudice.  New York law is clear that "once a claim is brought to a final conclusion, all other claims arising out of the same transaction or series of transactions are barred, even if based upon different theories or if seeking a different remedy." *O'Brien v. City of Syracuse*, 54 N.Y.2d 353, 357 (1981).[9]  Res judicata "operates to preclude the renewal of issues actually litigated and resolved in a prior proceeding as well as claims for different relief which arise out of the same factual grouping or transaction and which should have or could have been resolved in the prior proceeding." *Douglas Elliman, LLC v. Bergere*, 98 A.D.3d 642, 643 (2d Dep't 2012).

There can be no dispute that the claims asserted in this case were at issue, or, at a minimum, could have been raised, in the 2022 Action that dismissed IBT's claims with prejudice.  Thus, they are subject to dismissal.  *Smith v. Russell Sage Coll.,* 54 N.Y.2d 185, 193 (1981) (dismissing claim as barred by res judicata where "both [sets of claims] originate from the identical [] agreement," despite that "the legal theories differ in some respects"); *Marinelli Assocs. v. Helmsley-Noyes Co.*,

---

[9]    A court sitting putatively with diversity jurisdiction applies the res judicata principles of the forum state.  *Algonquin Power Income Fund v. Christine Falls of N.Y., Inc.*, 362 F. App'x 151, 154 (2d Cir. 2010).

265 A.D.2d 1, 8 (1st Dep't 2000) (holding that where "alternative theories are available to recover what is essentially the same relief for harm arising out of the same or related facts . . . will not justify presenting the claim by two different actions."). Where the Plaintiffs in a second case were not directly involved in the prior action, their claims arising out of the same transaction will be barred if they are "in privity" with the original plaintiff. *Bayshore Family Partners, L.P. v. Foundation of Jewish Philanthropies of Jewish Federation of Greater Fort Lauderdale*, 270 A.D.2d 374, 375 (2d Dep't 2000) (noting that for preclusion purposes, "privity" includes anyone who are successors to a property interest, those who control an action although not formal parties to it, and those whose interests are represented by a party to the action. (quoting *Watts v. Swiss Bank Corp.*, 27 N.Y.2d 270, 277 (1970))).

When confronted with this argument, Plaintiffs' Counsel only stated that "the investors in the Founder and Investor Consortium, are different persons than the plaintiff in the previous case you mentioned. The plaintiffs here are individual humans, not a corporate entity." Ex. 12 at 3. As to privity, Plaintiffs' counsel limited the inquiry solely to whether IBT was a member of the Consortium. Again, this is not the law. Among other thing, and as more fully explained in Mr. Pragad's motion to dismiss, Plaintiff Etienne Uzac was, at the time of the 2022 Action, the CEO in control of IBT and, thus, was "in privity" with it. In fact, he personally signed the MIPA transferring rights to Mr. Pragad. Ex. 3 at 10. There can be no argument otherwise. And the other alleged joint venture members are similarly bound as "affiliates" of the 2022 Action plaintiff, IBT. *Yeiser v. GMAC Mortg. Corp.*, 535 F. Supp. 2d 413, 423 (S.D.N.Y. 2008).

Because there is no basis to find that this lawsuit is not precluded by the 2022 Action, and this Court cannot change the state law of New York, sanctions are appropriate for its filing. *Morley v. Ciba–Geigy Corp.*, 66 F.3d 21, 25 (2d. Cir. 1995) (sanctions warranted where claims have "no

chance of success and no reasonable argument to extend, modify, or reverse the law as it stands."); *see also Amorosa*, 2010 WL 245553, at *5, 8 (litigant subject to sanctions for re-filing a complaint identical to one that had been dismissed even though plaintiff and defendant were new); *Lipin v. Hunt*, 573 F. Supp. 2d 836 (S.D.N.Y. 2008) (litigant subject to Rule 11 sanctions for ignoring New York jurisdictional law in new complaint, which had previously been dismissed by two other courts).[10]

### B.     Sufficiency of the Pleading

*Second*, as explained in Mr. Pragad's motion to dismiss, the Complaint also fails because it fails to allege both all necessary material terms of the alleged "Joint Venture Agreement" and specific details (*i.e.*, particularized pleading) about the alleged fraud on IBT.  *See Mellen & Jayne, Inc. v. AIM Promotions, Inc.*, 33 A.D.3d 676, 678 (2d Dep't 2006) (finding contract terms "too uncertain and indefinite to be enforceable" where alleged contract lacked terms relating to duration or penalties for nonperformance); *Fariello v. Checkmate Holdings, LLC*, 82 A.D.3d 437, 437 (1st Dep't 2011) (finding fraudulent inducement and promissory fraud claims were properly dismissed because they "were not pleaded with particularity").  As discussed above, Plaintiffs' Counsel nearly admits that terms as fundamental as the identity of the parties to the alleged "joint venture" are negotiable.  *See* Ex. 12 at 4.  This is in addition to clearly missing terms such as those defining when and how Mr. Pragad was to perform and the "nominal" price the Consortium would pay. *See Mellen & Jayne*, 33 A.D.3d at 678.

---

[10]     Plaintiffs' and their counsel's decision to file this action at all, which, as set out herein, is baseless, is separately sanctionable under 28 U.S.C. § 1927 for the same reasons.  Filing a baseless action in an improper forum is sanctionable.  *Banus v. Citigroup Glob. Markets, Inc.*, 757 F. Supp. 2d 394, 399 (S.D.N.Y. 2010).

Likewise, the claims are barred because the alleged "Joint Venture Agreement" is not enforceable as a matter of law because it violates, among other things, the statute of frauds. *See Benjamin v. 270 Malcolm X Dev., Inc.*, 214 A.D.3d 762, 763 (2d Dep't 2023). It lacks any form of writing, is for an indefinite duration, and does not meet the strict requirements for any exemptions from the statute of frauds. *See id.*

Again, these bases for dismissal, because they are incontrovertible, demand imposition of sanctions on Plaintiffs and their counsel. Plaintiffs simply have not pleaded all terms necessary to "enforce" the "Joint Venture Agreement" or the detail necessary to invoke fraud (if Plaintiffs can make this fraud claim at all). They also are bases for sanctions to be imposed on Plaintiffs and their counsel. *In re Austl. & N.Z. Banking Grp. Ltd. Sec. Litig.*, 712 F. Supp. 2d 255, 263 (S.D.N.Y. 2010) ("A pleading violates Rule 11(b)(3) where after a reasonable inquiry, a competent attorney could not form a reasonable belief that the pleading is well grounded in fact."); *Colliton*, 2008 WL 4386764, at *13 ("Under Rule 11(b)(3), plaintiffs must have an adequate, non-frivolous basis in fact for their claims.").

As noted above, Mr. Pragad provided Plaintiffs with a separate opportunity to supplement the record and provide any documents at all that support Plaintiffs' claims here. *See* Ex. 13. But Plaintiffs have not responded at all. The inference from this failure is clear. Plaintiff did not— because they cannot—provide any evidence to supplement or verify their claims because they are invented and no such evidence exists. Sanctions are, thus, appropriate on this ground as well. *Sussman Sales Co., Inc. v. VWR Int'l, LLC*, No. 20 CIV. 2869 (JHR), 2025 WL 1004729, at *6 (S.D.N.Y. Apr. 1, 2025).

### III.    PLAINTIFFS' COMPLAINT AND PLAINTIFFS' COUNSEL'S CONDUCT CLEARLY IS DESIGNED TO HARASS

As set out throughout this submission, this action (and the two filed the same day in state court) are efforts to harass Mr. Pragad and Newsweek, to revisit a contract that was ruled enforceable and final two years ago, and to cause Mr. Pragad to incur expenses where none should exist.  This is not unusual for these Plaintiffs.  As set out above, IBT and its affiliates have waged litigation warfare against Newsweek since their loss in the 2022 Action, including the Florida cases outlined above, another matter in the Southern District of New York (appealed to the Second Circuit and for which Plaintiffs' counsel sought an extension in her time to file a petition for writ of certiorari), and this action along with the State Contract Action and the State Fiduciary Action.  Throughout all of it, Plaintiffs' Counsel has been counsel to IBT and all of its affiliates, and she has signed the malicious pleadings and other papers at issue.  Here, Plaintiffs' Counsel's conduct has worsened, filing unwarranted letters with the Court simply to complain about Mr. Pragad and to levy attacks on him and his counsel.  If any case calls for sanctions for harassing conduct, it is this one.

Indeed, in cases where other courts have been faced with similar conduct, sanctions were imposed.  *See An v. Shan*, No. 22-CV-10060 (ALC), 2023 WL 6215003, at *5 (S.D.N.Y. Sept. 25, 2023) (imposing sanctions for filing of frivolous complaint that was intended to harass; plaintiffs had, through affiliates, attacked defendant in published stories through publications they owned; noting that "Attorneys' fees are an appropriate remedy to prevent harassment in the form of bad-faith litigation"); *Gortat v. Capala Bros., Inc.*, No. 07 CV 3629 (ILG), 2009 WL 10706564, at *1

(E.D.N.Y. June 3, 2009) (granting sanctions against Defendants and counsel for "ad hominem attacks against [plaintiffs] and their counsel").[11]

Likewise, it is as a result of this conduct that Mr. Pragad seeks not only monetary sanctions, but also limitations on Plaintiffs' and Plaintiffs' Counsel's ability to file additional cases related to Mr. Pragad's purchase of Newsweek. Such sanctions are imposed where plaintiffs abuse litigation serially to contest already settled issues. *E.g.*, *Immerso v. U.S. Dep't of Lab.*, No. 19CV3777NGGVMS, 2021 WL 3185531, at \*7 (E.D.N.Y. July 28, 2021) ("In particular, where a litigant or attorney has shown a propensity to engage in similar forms of vexatious litigation in multiple venues, '[w]e need not wait until . . . [he] inundates each federal district court with meritless actions to condition access to that court upon a demonstration of good faith.'" (quoting *In re Martin-Trigona*, 737 F.2d 1254, 1262 (2d Cir. 1984))), *aff'd sub nom. Immerso v. United States Dep't of Lab.*, No. 20-4064, 2022 WL 17333083 (2d Cir. Nov. 30, 2022). Here, Plaintiffs (as well as other affiliates of IBT) have repeatedly brought suit to challenge Mr. Pragad's purchase of Newsweek, which was ruled enforceable—and IBT's claims were dismissed with prejudice— **years ago**. *See* Exs. 6-7. Plaintiffs, their affiliates, and their counsel (who represents the IBT group in every recent lawsuit) should be required to seek leave of court, or to post a bond, to file any new such cases, or anything related to the Newsweek purchase, against Mr. Pragad, Newsweek, or their affiliates.

## **CONCLUSION**

For the foregoing reasons, Mr. Pragad respectfully requests that the Court sanction Plaintiff and Plaintiffs' Counsel for their violations of Rule 11. Mr. Pragad further request that the Court

---

[11]    As above with Mr. Pragad's argument as to the sufficiency of Plaintiffs' claims, this harassing conduct also satisfies the "vexatious" litigation requirements for sanctions under 28 U.S.C. § 1927. *See Banus*, 757 F. Supp. 2d 399.

award all attorneys' fees, costs, and other expenses incurred by him in connection with defending against this frivolous action, as well as any other sanctions the Court deems appropriate. In particular, Mr. Pragad urges the Court to impose vexatious litigant sanctions on Plaintiffs and their counsel, either requiring them to seek leave of court or to post a bond to file new related litigations.

Dated:    June 30, 2025
          New York, New York                         Respectfully submitted,

                                                     PALLAS PARTNERS (US) LLP


                                                     By: _/s/ *Shireen A. Barday*___
                                                     Shireen A. Barday
                                                     Andrew W. Breland
                                                     75 Rockefeller Plaza
                                                     New York, New York 10019
                                                     Telephone: (212) 970-2700
                                                     shireen.barday@pallasllp.com
                                                     andrew.breland@pallasllp.com

                                                     *Attorneys for Defendant*

## CERTIFICATE OF WORD COUNT COMPLIANCE

I affirm that this Memorandum of Law in Support of Defendant's Motion for Sanctions complies with the provisions of Rule 3.C of the Individual Rules of Practice in Civil Cases of Judge Jennifer L. Rochon because it contains 7,936 words, exclusive of the cover, table of contents, table of authorities, signature block, and certification of word count.

Dated: June 30, 2025
        New York, New York

By: _/s/ Shireen A. Barday_
Shireen A. Barday
Andrew W. Breland
PALLAS PARTNERS (US) LLP
75 Rockefeller Plaza
New York, NY 10019
Tel. (212) 970-2300
Shireen.Barday@pallasllp.com
Andrew.Breland@pallasllp.com

25