UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

---

ETIENNE UZAC, DAVID ENWRIGHT,
WILLIAM DOVE, MYONG SOP SHIM,
JAEWON KIM, DONG-CHAN KIM, and
JAMES KONG,

                   Plaintiffs,

        -against-

DEV PRAGAD,

                   Defendant.

Case No. 1:25-cv-03573 (JLR)

**OPINION AND ORDER**

---

JENNIFER L. ROCHON, United States District Judge:

On April 29, 2025, Plaintiffs Etienne Uzac ("Uzac"), David Enwright ("Enwright"), Jaewon "Jason" Kim ("J. Kim"), Dong-Chan "Benjamin" Kim ("B. Kim"), William Dove ("Dove"), Myong Sop "Maxwell" Shim ("Shim"), and James Kong ("Kong"), (collectively, "Plaintiffs"), brought claims for breach of contract and recission against Defendant Dev Pragad ("Defendant" or "Pragad").  Plaintiffs subsequently amended their Complaint on August 14, 2025.  Pragad moved to dismiss the First Amended Complaint pursuant to Federal Rules of Civil Procedure ("Rule") 12(b)(1), 12(b)(6), and 12(b)(7), and sought Rule 11 sanctions against Plaintiffs and their counsel.  For the following reasons, the Court GRANTS Pragad's motion to dismiss and DENIES his motion for sanctions.

## BACKGROUND

### I.   Factual Background

The following facts are drawn from the First Amended Complaint, Dkt. 22 (the "First Amended Complaint" or "FAC"), and are taken as true for purposes of this motion.  *See Koch v. Christie's Int'l PLC*, 699 F.3d 141, 145 (2d Cir. 2012).

This action concerns the disputed ownership of the news magazine, Newsweek. Sometime before August 2013, Uzac, the then-Chairman and CEO of IBT Media Inc. ("IBT Media"), "was approached with the opportunity to acquire Newsweek from another large media conglomerate."  FAC ¶ 96.  Interested in making a bid for Newsweek, Uzac assembled a group of founders and investors, known as the "Joint Venture."[1]  *Id.*  The Joint Venture included Plaintiffs Uzac, Shim, J. Kim, B. Kim, Enwright, Dove, and Kong, as well as non-parties Jonathan Davis ("Davis"), Younseok "Titus" Choi ("Choi"), Moonsoo "Martin" Jung ("Jung"), James Yang ("Yang"), Nancy Lee ("N. Lee"), Sylvia Lee ("S. Lee"), and Winnie Wong ("Wong").  *Id.* ¶ 93.  Wong, S. Lee, N. Lee, Choi, Yang, and Jung are Plaintiffs in a related state court action, *Wong v. Pragad*, Index No. 62345/2025 (N.Y. Sup. Ct. April 29, 2025).  *See generally* Dkt. 29-2 ("*Wong* Am. Compl.").

The coventurers "orally agreed to a Joint Venture Agreement [("JVA I")]" to govern their bid for Newsweek.  FAC ¶ 97.  Under the JVA I, "Newsweek would be held ostensibly in Newsweek LLC, a subsidiary to be created by IBT Media."  *Id.*  Uzac would manage Newsweek's assets for the benefit of the Joint Venture and make regular reports to its members. *Id.*  If Uzac or IBT Media wanted to leave the Joint Venture, "the Newsweek assets would be returned to the [Joint Venture] for a nominal amount."  *Id.* ¶ 98.  The coventurers would also have equal ownership of the Newsweek assets and share the profits and losses equally.  *Id.* ¶ 97. Additionally, each coventurer had equal voting power, and "no major decisions about the Newsweek brand or assets were to be made without a consensus of the [coventurers]."  *Id.*  "[I]n

---

[1] The First Amended Complaint also refers to the Joint Venture as the "Founder and Investor Consortium" or the "Consortium."  *See, e.g.*, FAC ¶ 92.  For simplicity, the Court will consistently refer to this group as the Joint Venture.

effect," the coventurers were "beneficial owners and effective controllers of Newsweek assets, each in equal proportion to one another." *Id.*

The Joint Venture's bid succeeded, and on August 3, 2013, the Joint Venture acquired Newsweek. *Id.* ¶ 99. Uzac took over and began to revamp Newsweek's business, recruiting new management and journalism talent and opening new business opportunities. *Id.* ¶¶ 105-11. Likewise, the other coventurers invested heavily in the Newsweek brand, contributing their "time, talent, and intellectual capital" with the expectation of significant future returns. *Id.* ¶ 103. Many of the coventurers received little to no immediate return on their investment in Newsweek, with some even forgoing salary and bonus payments to prioritize their investment. *Id.* ¶ 104.

In or about 2016, the Manhattan District Attorney's office began investigating Uzac. Days before an expected indictment in 2018, Pragad, a Newsweek employee, reached out to members of the Joint Venture to propose that he succeed Uzac. *Id.* ¶¶ 116-19. According to the First Amended Complaint, the coventurers were skeptical, but Pragad convinced them by falsely claiming that members of the Manhattan District Attorney's office favored his proposed leadership transition. *Id.* ¶ 122. Such a transfer, according to Pragad, would take the "heat" off Uzac and benefit the Joint Venture. *Id.* Relying on these allegedly false statements, the Joint Venture agreed to transfer Newsweek to Pragad. *See id.* ¶¶ 124-25. To govern the transfer and Pragad's management of Newsweek, Pragad agreed "to enter the Joint Venture on equal terms as the other coventurers" ("JVA II"). *Id.* ¶ 125; *see also id.* ¶ 164 ("The parties to the [JVA II] were the prior existing coventurers, each a natural person, plus Pragad."). Furthermore, Pragad agreed that his position as manager and ostensible owner of Newsweek would last no more than three years, subject to renewal. *Id.* ¶ 141; *see also id.* ¶ 164. While he owned Newsweek, Pragad was obligated not to sever ties with Uzac or the Joint Venture, *id.* ¶¶ 128-29, and if he

3

did, he would be required to return his share of Newsweek to Uzac or the Joint Venture for a nominal price, relinquish his position as ostensible owner of Newsweek, and forfeit his interest in the Joint Venture.  *Id.* ¶¶ 129, 134.

The Joint Venture and Pragad created a new company, NW Media Holdings Corp. ("NW Media"), to hold the Newsweek assets, "which would continue to be managed by Pragad for the benefit of the Joint Venture."  *Id.* ¶ 125.  Pragad owned half of NW Media; Davis, a fellow Joint Venture member, owned the other half.  *Id.* ¶ 126.  On September 13, 2018, Uzac signed a Membership Interest Purchase Agreement ("MIPA"), transferring the Newsweek assets from IBT Media to NW Media for a "nominal price."  *See id.* ¶¶ 133, 167.  Although Pragad "became a purported owner of Newsweek," the coventurers understood that they still retained an equal share of the Newsweek assets, *id.* ¶ 133.

Uzac eventually resolved the Manhattan District Attorney's investigation in 2020 by pleading guilty.  *Id.* ¶ 137.  Subsequently, on or about December 5, 2020, Pragad was "told that he would not be recommended to continue as the Joint Venture's ostensible representative."  *Id.* ¶ 141.  But "instead of adhering to the terms of the Joint Venture," Pragad resolved to "sever[] all ties with the group."  *Id.*  In January 2022, the Joint Venture became concerned that Pragad would was planning to do just that, and renege on his obligations under the JVA II.  *Id.* ¶ 142. The Joint Venture therefore initiated a leadership transition back to Uzac on February 28, 2022. *Id.* ¶¶ 144-45.  Pragad opposed this reinstatement and then requested the Joint Venture's "permission" to breach the JVA II and keep running Newsweek.  *Id.* ¶¶ 148-50.  When this failed, Pragad "officially" severed ties with the Joint Venture in April 2022.  *Id.* ¶ 151-52.

Litigation ensued.  On June 30, 2022, IBT Media sued Pragad and NW Media in New York State Supreme Court (the "2022 Action") for refusing to return Newsweek to IBT Media and Uzac.  *See* Summons & Compl. ¶¶ 97-167, *IBT Media Inc. v. Pragad*, No. 652277/2022

(N.Y. Sup. Ct. June 30, 2022) (NYSCEF Doc. No. 1).  The state court dismissed the claims, finding that any oral contract between the parties was precluded by the written MIPA, which included a merger clause and provision where IBT Media "specifically disclaimed that it had any reversionary or other rights to retrieve Newsweek." *IBT Media Inc. v. Pragad*, No. 652277/2022, 2022 WL 17833309, at *4 (N.Y. Sup. Ct. Dec. 19, 2022).  The Appellate Division affirmed the dismissal, modifying the decision to also "declare that the [MIPA] is enforceable." *IBT Media Inc. v. Pragad*, 220 198 N.Y.S.3d 672, 675 (N.Y. App. Div. 2023).

## II.    Procedural Background

Plaintiffs commenced this action against Pragad on April 29, 2025, for breach of the JVA II, Dkt. 3 ("Compl."),[2] seeking equitable relief in the form of specific performance, *see id.* ¶¶ 89-98, or recission, *id.* ¶¶ 99-112.  On the same day, Joint Venture members Wong, N. Lee, S. Lee, Choi, Yang, and Jung (collectively, the "*Wong* Plaintiffs"), sued Pragad in New York State Supreme Court, alleging that Pragad had breached the JVA II and similarly requested specific performance or rescission.  *See generally Wong* Am. Compl.  On October 8, 2025, the State Supreme Court stayed the case because of the substantial overlap with the federal action.  *See generally Wong*, 2025 WL 2935457.[3]

On June 30, 2025, Pragad moved to dismiss the original federal complaint, Dkt. 13, and filed a motion for sanctions pursuant to Rule 11, Dkt. 14 ("Sanctions Mot."); Dkt. 14-1

---

[2] Due to a filing error, Plaintiffs refiled their Complaint on May 1, 2025.

[3] IBT Media also initiated a suit on April 30, 2025, against Pragad and other Newsweek executives for breach of fiduciary duty, fraudulent misrepresentation, and negligent misrepresentation.  *See* Summons & Compl., *IBT Media, Inc. v. Pragad*, Index No. 62346/2025 (N.Y. Sup. Ct. Apr. 30, 2025) (NYSCEF Doc. No. 1).  The State Supreme Court dismissed the claims against Pragad and several of the executives on December 11, 2025.  *See* Decision & Order, *IBT Media, Inc. v. Pragad*, Index No. 62346/2025(N.Y. Sup. Dec. 11, 2025) (NYSCEF Doc. No. 66); *see* also Dkt. 46.

("Sanctions Br."); Dkt. 14-2 ("Barday Sanctions Decl."). Plaintiffs filed an opposition to the motion for sanctions on August 14, 2026, Dkt. 21 ("Sanctions Opp."), and Pragad replied on Dkt. 32 ("Sanctions Reply"); Dkt. 33 ("Barday Reply Sanctions Decl.").

Instead of opposing the motion to dismiss, Plaintiffs amended their complaint on August 14, 2025, adding additional facts but continuing to seek the same equitable relief. *See* FAC ¶¶ 210-19 (claim for breach of contract seeking specific performance); *id.* ¶¶ 220-33 (alternative claim for recission).[4] On August 28, 2025, Pragad moved to dismiss the First Amended Complaint pursuant to Rules 12(b)(1), 12(b)(6), and 12(b)(7). Dkt. 27 ("MTD"); Dkt. 28 ("Br."); Dkt. 29 ("Barday MTD Decl."). Plaintiffs opposed the motion on September 12, 2025, Dkt. 37 ("Opp."), and Pragad replied on September 18, 2025, Dkt. 39 ("Reply"). Both the motion to dismiss and the motion for sanctions are fully briefed.

## DISCUSSION

Pragad argues that the Court should dismiss the First Amended Complaint for lack of subject matter jurisdiction pursuant to Rule 12(b)(1), Br. at 15-18, for failure to state a claim under Rule 12(b)(6), *id.* at 11-15, 19-25, or for failure to join a party under Rule 12(b)(7)[5] and Rule 19, *id.* at 18-19. The Court agrees that dismissal is appropriate under Rule 12(b)(7), and therefore need not reach Pragad's other grounds for dismissal.

---

[4] Plaintiffs filed several exhibits and declarations with their First Amended Complaint. Dkt. 24 (Exhibits 1-15); Dkt. 25 (Exhibits 16-25); Dkt. 26 (Declarations in Support of First Amended Complaint).

[5] Pragad mistakenly refers to Rule 12(b)(5) covering dismissal for "insufficient service of process" in his notice of motion, Dkt. 27, but the briefs make clear that Pragad is seeking dismissal under Rule 12(b)(7), Br. at 1, so the Court will construe the motion as one under Rule 12(b)(7).

## I.    Legal Standard

Under Rule 12(b)(7), a court may dismiss an action for "failure to join a party under Rule 19." Fed. R. Civ. P. 12(b)(7).  Rule 19, in turn, "sets forth a two-step test for determining whether the court must dismiss an action for failure to join" a party to the suit. *Viacom Int'l, Inc. v. Kearney*, 212 F.3d 721, 724 (2d Cir. 2000), *abrogated on other grounds as recognized in Merrill Lynch & Co. v. Allegheny Energy, Inc.*, 500 F.3d 171, 179 (2d Cir. 2007); *accord Chalfin v. Go Big Solar, LLC*, No. 24-cv-04768 (KPF), 2025 WL 2022012, at *11 (S.D.N.Y. July 17, 2025).  The Court first "determine[s] whether the party should be joined as a 'necessary party' under Rule 19(a)." *Am. Trucking Ass'n, Inc. v. N.Y. State Thruway Auth.*, 795 F.3d 351, 356 (2d Cir. 2015) (quoting *ConnTech Dev. Co. v. Univ. of Conn. Educ. Props., Inc.*, 102 F.3d 677, 681 (2d Cir. 1996)).  A party is necessary under Rule 19(a) when (1) "the court cannot accord complete relief among existing parties" without the party; (2) the party has an interest in the action such that the Court's disposition would "as a practical matter impair or impede the [party]'s ability to protect the interest"; or (3) the party's absence would "leave an existing party subject to a substantial risk of incurring double, multiple, or otherwise inconsistent obligations." Fed. R. Civ. P. 19(a)(1)(A)-(B); *accord Redafco, Inc. v. Philadelphia Indem. Ins. Co.*, No. 25-cv-04891 (JSR), 2025 WL 3003300, at *1 (S.D.N.Y. Oct. 27, 2025).  "If a necessary party 'has not been joined as required,' the court must order joinder." *JM Holdings 1 LLC v. Quarters Holding GmbH*, No. 20-cv-03480 (JPO), 2021 WL 860516, at *3 (S.D.N.Y. Mar. 8, 2021) (quoting Fed. R. Civ. P. 19(a)(2)).

However, if "joinder of the [necessary] party is not feasible for jurisdictional or other reasons," then the Court consults Rule 19(b) to determine whether the party is "indispensable" to the litigation. *Viacom*, 212 F.3d at 725; *accord Am. Trucking*, 795 F.3d at 357.  A party is "indispensable" under Rule 19(b), when, "'in equity and good conscience,' the party is one

without whom the action between the remaining parties cannot proceed." *Marvel Characters, Inc. v. Kirby*, 726 F.3d 119, 132 (2d Cir. 2013) (quoting Fed. R. Civ. P. 19(b)).  In making this assessment, the Court considers the following factors:

> (1) the extent to which a judgment rendered in the person's absence might prejudice that person or the existing parties; (2) the extent to which any prejudice could be lessened or avoided by: (A) protective provisions in the judgment; (B) shaping the relief; or (C) other measures; (3) whether a judgment rendered in the person's absence would be adequate; and (4) whether the plaintiff would have an adequate remedy if the action were dismissed for nonjoinder.

Fed. R. Civ. P. 19(b)(1)-(4).  "[W]hether a particular lawsuit must be dismissed in the absence of" a party under Rule 19(b), "can only be determined in the context of particular litigation." *Seneca Nation v. Hochul*, 58 F.4th 664, 669 (2d Cir. 2023) (quoting *Provident Tradesmens Bank & Tr. Co. v. Patterson*, 390 U.S. 102, 118 (1968)); *see also CP Sols. PTE, Ltd. v. Gen. Elec. Co.*, 553 F.3d 156, 159 (2d Cir. 2009) (per curiam) (finding "bright-line rule[s] . . . inconsistent with Rule 19(b)'s flexible standard").  As such, the Court has "substantial discretion in considering which factors to weigh and how heavily to emphasize certain considerations in deciding whether the action should go forward in the absence of someone needed for a complete adjudication of the dispute." *Envirotech Corp. v. Bethlehem Steel Corp.*, 729 F.2d 70, 75 (2d Cir. 1984) (citation omitted); *accord Walker v. City of Waterbury*, 253 F. App'x 58, 62 (2d Cir. 2007) (summary order).  Moreover, there is a "generally accepted principle that the court is not limited to the pleadings on a Rule 12(b)(7) motion." *Fagioli S.p.A. v. Gen. Elec. Co.*, No. 14-cv-07055 (AJN), 2015 WL 3540848, at \*4 (S.D.N.Y. June 5, 2015); *accord Am. Ins. Co. v. Kartheiser*, No. 17-cv-05545 (JMF), 2018 WL 2388533, at \*1 (S.D.N.Y. May 25, 2018).

## II.    Pragad's Motion under Rule 12(b)(7)

Pragad argues that the other members of JVA II who are not joined in this action — namely, Davis, J. Kim, B. Kim, Choi, Jung, Yang, N. Lee, S. Lee, and Wong

8

(collectively, the "Absent Coventurers") — are necessary parties who cannot be joined without destroying diversity jurisdiction. Br. at 19. He further argues that the Absent Coventurers "are indispensable to this action" under the circumstances and therefore the case should be dismissed. *Id.*; Reply at 5-6. Plaintiffs did not oppose or otherwise address this argument in their opposition brief. *See generally* Opp. Thus, this portion of the motion is unopposed, and the Court addresses each factor guided only by Pragad's arguments.

First, the Absent Coventurers are necessary parties to this action under Rule 19(a). Typically, "[i]f the resolution of a plaintiff's claim would require the definition of a non-party's rights under a contract, it is likely that the non-party is necessary under Rule 19(a)." *Jonesfilm v. Lion Gate Int'l*, 299 F.3d 134, 141 (2d Cir. 2002); *see also Chalfin*, 2025 WL 2022012, at *12 ("It is well established that a party to a contract that is the subject of the litigation is considered a necessary party."); *Glob. Disc. Travel Servs., LLC v. Trans World Airlines, Inc.*, 960 F. Supp. 701, 707-08 (S.D.N.Y. 1997) ("As a direct party to the contract which is under dispute, [the absent party] is a necessary party to this litigation for at least three reasons articulated under [Rule 19(a)]."). That is the case here. According to the First Amended Complaint, "[t]he parties to the [JVA II] were the prior existing [coventurers] . . . [and] Pragad." FAC ¶ 164; *see also id.* ¶¶ 125. Each party held an equal interest in the Joint Venture, *see id.* ¶ 97, and Pragad joined as an equal partner under the JVA II, *id.* ¶ 125. To resolve Plaintiffs' claims for breach of contract and rescission, the Court would have to adjudicate the validity of the JVA II, and the rights and obligations owed by Plaintiffs and the coventurers. These decisions could impair or impede the Absent Coventurers' ability to protect their interests in the JVA II, most of whom are seeking parallel relief in the state court action, *Wong v. Pragad*. *See Wong* Am. Compl.; *see, e.g.*, *Baldwin v. Interscope Recs., Inc.*, No. 19-cv-08923 (JGK), 2021 WL 847976, at *5 (S.D.N.Y. Mar. 4, 2021) (finding non-party was necessary when her rights under the disputed contracts

9

were "relevant to the [action]"); *Kermanshah v. Kermanshah*, No. 08-cv-00409 (BSJ) (AJP), 2010 WL 1904135, at *3 (S.D.N.Y. May 11, 2010) (finding contracting party necessary under Rule 19(a)) because "where . . . equitable relief is sought in addition to monetary damages, the presence of all parties is necessary."); *Spencer Stuart Hum. Res. Consultancy (Shanghai) Co. v. Am. Indus. Acquisition Corp.*, No. 17-cv-02195 (DLC), 2017 WL 4570791, at *3 (S.D.N.Y. Oct. 12, 2017) ("Under Rule 19(a), all parties to a contract are generally regarded as necessary parties, particularly when issues such as cancellation of the agreement are at issue.").

Additionally, continuing this action without the Absent Coventurers places Pragad at substantial risk of inconsistent obligations. The plaintiffs in *Wong v. Pragad* and Plaintiffs in this case seek the same equitable relief of specific performance or recission of the JVA II. Thus, there is a real risk of conflicting relief. *See, e.g.*, *Davidson Well Drilling, Ltd. v. Bristol-Myers Squibb Co.*, No. 09-cv-01431 (SAS), 2009 WL 2135396, at *6 (S.D.N.Y. July 16, 2009) (finding a party necessary when, because another "action is proceeding concurrently with the instant action, there is a significant risk that both parties will be subject to inconsistent obligations"); *Glob. Disc. Travel Servs.*, 960 F. Supp. at 708-09 (finding party to contract necessary because defendant could be subjected to "having another court re-decide its rights and obligations under the [contract]," which "is precisely what Rule 19 seeks to avoid"). Under these circumstances, the Absent Coventurers are necessary parties under Rule 19(a).

The Absent Coventurers, however, cannot join this action without depriving the Court of subject matter jurisdiction. Plaintiffs have alleged that this Court has diversity jurisdiction pursuant to 28 U.S.C. § 1332 because Plaintiffs are citizens of Connecticut, the United Kingdom, and New Zealand, while Pragad is a citizen of New York. *See* FAC ¶¶ 79-89. According to the *Wong* Amended Complaint, several of the Absent Coventurers are citizens of New York, *see Wong* Am. Compl. ¶¶ 79-85, and would therefore destroy complete diversity. The *Wong*

10

Plaintiffs admit as much in their amended complaint: "Although the two cases — one, federal, and the other, state — are parallel, the Southern District federal court cannot exercise supplemental jurisdiction over the present case in-state claims because doing so would break complete diversity among the parties." *Id.* at 2 n.2.  As such, joinder of the Absent Coventurers is infeasible.  *See, e.g.*, *Marsh USA Inc. v. Osterhage*, No. 18-cv-03439 (AJN), 2019 WL 1382440, at *6 (S.D.N.Y. Mar. 27, 2019) (finding that joinder "would be infeasible because it would destroy diversity"); *Murphy v. Morlitz*, No. 15-cv-07256 (VSB), 2017 WL 4221472, at *5 (S.D.N.Y. Sept. 21, 2017) ("As [the non-party]'s presence would destroy diversity jurisdiction, the joinder of [the non-party] is not 'feasible.'" (citation omitted)), *aff'd,* 751 F. App'x 28 (2d Cir. 2018) (summary order).

Since joinder of the Absent Coventurers would destroy diversity jurisdiction, the Court must consider whether they are indispensable parties under Rule 19(b).  As stated above, this analysis is guided by four factors: "(1) whether a judgment rendered in a person's absence might prejudice that person or parties to the action, (2) the extent to which any prejudice could be alleviated, (3) whether a judgment in the person's absence would be adequate, and (4) whether the plaintiff would have an adequate remedy if the court dismissed the suit." *Marvel Characters*, 726 F.3d at 133 (quoting *CP Sols.*, 553 F.3d at 159).  The Absent Coventurers are indispensable parties under the aforementioned factors.

First, a judgment rendered in the absence of the Absent Coventurers would prejudice the Absent Coventurers and Pragad.  The Absent Coventurers' interest in the JVA II could be impaired by the Court's decision.  Moreover, Pragad faces prejudice from possible inconsistent judgments and conflicting obligations.  Such prejudice supports the indispensability of the Absent Coventurers.  *See, e.g.*, *Errico v. Stryker Corp.*, 281 F.R.D. 182, 188 (S.D.N.Y. 2012) (finding non-joinder of "joint obligees" exposes defendant "to a substantial risk of prejudice"

11

from multiple or inconsistent judgments); *William A. Gross Constr. Assocs., Inc. v. Am. Mfrs. Mut. Ins. Co.,* No. 07-cv-10639 (LAK) (AJP), 2009 WL 427280, at *11 n.24 (S.D.N.Y. Feb. 23, 2009) ("[W]here the absent party is a joint obligee rather than a joint obligor, the courts will dismiss on indispensability grounds, because the absent party could bring a separate action, subjecting the obligors 'to double liability on the same claim.'" (quoting *Janney Montgomery Scott, Inc. v. Shepard Niles, Inc.*, 11 F.3d 399, 408 (3d Cir. 1993))).

Second, there are no clear mechanisms to minimize the aforementioned prejudice. In assessing the second factor, the Court can "consider proposals by the parties or create its own mechanisms to lessen the effect of that prejudice." *Kermanshah*, 2010 WL 1904135, at *4. Plaintiffs do not present any mechanism that could lessen the risk of prejudice (or, indeed, oppose this motion at all). *See generally* Opp. Moreover, the Absent Coventurers' interests in the JVA II are so intertwined that it is difficult to see how the Court could craft a judgment for specific performance or recission that would not impair or impact their rights, or minimize Pragad's risk of incurring multiple or inconsistent judgments. *See, e.g.*, *Baldwin*, 2021 WL 847976, at *6 (finding that "it is not possible for this [c]ourt to craft a judgment in [non-party]'s absence that would lessen the potential prejudice to her interests" when the relevant contracts are deeply intertwined); *Kermanshah*, 2010 WL 1904135, at *4 (concluding that there was "no way to lessen the risk of substantial prejudice" when the parties failed to present any mechanisms to achieve that goal).

Third, a judgment rendered without the Absent Coventurers would be inadequate. In the context of Rule 19(b)(3), "adequacy refers to the 'public stake in settling disputes by wholes, whenever possible.'" *Republic of Philippines v. Pimentel*, 553 U.S. 851, 870 (2008) (quoting *Provident Tradesmens Bank & Tr. Co.*, 390 U.S. at 111). "This 'social interest in the efficient administration of justice and the avoidance of multiple litigation' is an interest that has

12

'traditionally been thought to support compulsory joinder of absent and potentially adverse claimants.'" *Id.* (quoting *Illinois Brick Co. v. Illinois*, 431 U.S. 720, 737-38 (1977)).  Here, there is a strong public interest in resolving this dispute over the JVA II in a single litigation. Allowing parallel actions would waste judicial resources and risk inconsistent or conflicting judgments.  This case is also in the early stages of litigation, and therefore it would be an efficient use of judicial resources to dismiss this case in favor of the present state court action where all parties can be joined.  As such, this factor weighs heavily in favor of dismissal.

Finally, Plaintiffs have an adequate remedy in New York state court if the action were dismissed.  Plaintiffs allege only state law claims, and several of the Absent Coventurers have already brought an identical action in state court.  *See Wong* Am. Compl.  Thus, dismissing this case under Rule 12(b)(7) will not deprive Plaintiffs of a forum to pursue their claims in state court.  *See, e.g., Fagioli*, 2014 WL 12768461, at *5 (finding dismissal under Rule 12(b)(7) would not deprive plaintiff of an adequate remedy when there was already a claim "in New York State court that arises under the same [contract] and involves the same issues").

Therefore, the Absent Coventurers are indispensable parties under Rule 19(b) and Pragad's unopposed motion to dismiss the First Amended Complaint pursuant to Rule 12(b)(7) is granted.  *See Davidson Well Drilling, Ltd.*, 2009 WL 2135396, at *6 (dismissing action when non-party was "necessary and indispensable" to the suit, but joinder would destroy diversity jurisdiction).

## III.    Motion for Sanctions

Pragad also moves for sanctions against Plaintiffs and their counsel pursuant to Rule 11, arguing: (1) Plaintiffs manipulated subject matter jurisdiction, Sanctions Br. at 16-17; (2) Plaintiffs' claims are frivolous, *id.* at 18-21; and (3) Plaintiffs' Complaint and their counsel's conduct is designed to harass Pragad, *id.* at 22-23.  The Court will not impose sanctions.

Rule 11(b) provides that an attorney presenting a pleading, written motion, or other paper to the court certifies that "(1) it is not being presented for any improper purpose, such as to harass, cause unnecessary delay, or needlessly increase the cost of litigation; (2) the claims, defenses, and other legal contentions are warranted by existing law or by a nonfrivolous argument for extending, modifying, or reversing existing law or for establishing new law; [and] (3) the factual contentions have evidentiary support or . . . will likely have evidentiary support after a reasonable opportunity for further investigation or discovery." Fed. R. Civ. P. 11(b)(1)-(3). If a court determines that Rule 11(b) has been violated, the decision whether to impose sanctions is ultimately "a matter for the court's discretion." *Bobcar Media, LLC v. Aardvark Event Logistics, Inc.*, No. 16-cv-00885 (JPO), 2019 WL 422613, at *2 (S.D.N.Y. Feb. 4, 2019) (quoting *Perez v. Posse Comitatus*, 373 F.3d 321, 325 (2d Cir. 2004)).

The Court will not, in its discretion, impose sanctions at this time. Pragad's request for sanctions largely mirrors the grounds on which he seeks to dismiss the case, and because the Court has not reached the question of the merits of the claims brought, the Court cannot say at this time that those claims are so patently void of any legal or factual basis as to warrant sanctions. Although the Court is exercising its discretion to dismiss Plaintiff's action under Rule 12(b)(7) for failure to join indispensable parties, this does not speak to the reasonableness of the FAC. Whether Plaintiff's action is frivolous is best reserved for the state court, where the claims will presumably be litigated on the merits. *See United Specialty Ins. Co. v. Fisk Fine Art Servs., LLC*, No. 15-cv-02802 (LTS) (JCF), 2016 WL 1268273, at *5 (S.D.N.Y. Mar. 31, 2016) (denying to sanctions when movant simply "merely reiterate[d] its arguments in support of its motion to dismiss"); *JM Holdings 1 LLC*, 2021 WL 860516, at *8 (rejecting sanctions because allegations were not "so 'patently void of any legal or factual basis' as to warrant sanctions"

14

(quoting *Louis Vuitton Malletier v. Dooney & Bourke, Inc.*, No. 04-cv-05316 (RMB) (MHD), 2006 WL 2807213, at \*6 (S.D.N.Y. Sept. 28, 2006))).

Pragad also argues that sanctions are warranted because Plaintiffs and their counsel are harassing Pragad through repeated lawsuits and personal attacks, and he asks the Court to impose "limitations on Plaintiffs' and Plaintiffs' Counsel's ability to file additional cases related to Mr. Pragad's purchase of Newsweek." Sanctions Br. at 23. The Court will not do so. As stated above, the Court has not assessed whether the claims are frivolous on the merits and leaves that determination to the state court. Moreover, "[a] litigation bar, which restricts a litigant from making future court filings without obtaining court approval, is a 'drastic measure,'" *Shukla v. Meta Platforms Inc.*, No. 23-cv-10150 (JGLC) (GS), 2024 WL 4108563, at \*16 (S.D.N.Y. July 17, 2024) (quoting *Sorenson v. Wolfson*, 170 F. Supp. 3d 622, 626 (S.D.N.Y. 2016), *aff'd,* 683 F. App'x 33 (2d Cir. 2017) (summary order)), *report and recommendation adopted*, 2024 WL 3634796 (S.D.N.Y. Aug. 2, 2024), and one that the Court will not impose at this time. *See, e.g.*, *Sorenson*, 170 F. Supp. 3d at 626 (finding plaintiff's post-trial motion to amend the court's findings of facts "d[id] not constitute the type of abuse of the judicial process that warrant the imposition of a filing injunction"). Accordingly, Pragad's motion for sanctions is denied.

## CONCLUSION

For the aforementioned reasons, Pragad's motion to dismiss pursuant to Rule 12(b)(7) is GRANTED and his motion for sanctions is DENIED. The Clerk of the Court is respectfully directed to terminate the open motions at Dkts. 14 and 27 and close this case.

Dated: March 25, 2026
      New York, New York             SO ORDERED.

*Jennifer Rochon*
_____
JENNIFER L. ROCHON
United States District Judge

15